## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: Elizabeth Ann and<br>Jeffrey Scott Buffenmeyer, | : | Chapter 7 |
| | : | |
| Debtors. | : | Bky.  No. 19-16950 (PMM) |
| _____ | : | |
| | : | |
| Lynn E. Feldman, Chapter 7 Trustee, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| Elizabeth Buffenmeyer, Wolf, Baldwin &<br>Assoc., P.C., The Arc of Chester County, and<br>Northstone Insurance Co., | : | |
| | : | |
| | : | |
| Defendants. | : | Adv.  No.  20-0018 (PMM) |
| | : | |

# O P I N I O N

## I.  INTRODUCTION

Prior to Elizabeth and Jeffrey Buffenmeyer ("the Debtors")[1] filing for chapter 7

bankruptcy relief, Ms. Buffenmeyer suffered an injury at her job at the Arc of Chester County

(the "Arc"), where she was employed as a home health aide.  The injury meant both that the

Debtor was unable to return to full-time employment and that she was entitled to workers'

compensation for her disability.

Pre-petition, the Debtor received regular workers' compensation payments from the Arc.

Post-petition, Ms. Buffenmeyer was awarded $85,000.00 (the "Compensation Payment"), which

---

[1]        Elizabeth Buffenmeyer will be referred to as "Ms. Buffenmeyer" or the "Debtor."

was the result of a demand made on her behalf by Wolf, Baldwin & Associates, PC ("the Firm"),

a law firm representing the Debtor in the workers' compensation dispute and negotiations. Ms.

Buffenmeyer received $68,000.00 of the Compensation Payment. The Firm was entitled to

twenty percent (20%) of the Compensation Payment, or $17,000.00 (the "Contingency Fee").

The Contingency Fee, like the sum paid directly to the Debtor by Arc, was made after the

bankruptcy filing and without authorization from this court.

The chapter 7 trustee (the "Trustee") seeks to avoid the entire $85,000.00 Compensation

Payment. In filing this adversary proceeding, the Trustee sets out to recover the funds as an

unauthorized post-petition transfer and further asserts that the Debtor's claimed exemption of the

money must be denied. The Trustee alleges that the Debtor's attempt to hide the asset warrants

denial of her discharge pursuant to §§727(a)(2)(B), (a)(4), and (a)(6). The Debtor counters that

because the Compensation Payment is fully exempt, it is not property of the estate subject to the

Trustee's claw back. Ms. Buffenmeyer also rejects the idea that discharge should be denied due

to alleged malfeasance.

For its part, the Firm asserts both that the Compensation Payment is exempt and that it is

a good faith transferee, meaning there is no basis for the Trustee to avoid and recover its

Contingency Fee.

The Debtor, the Trustee, and the Firm each filed a Motion for Summary Judgment (the

"Motions"), agreeing in principle that there is no issue of fact for trial[2] and that all, or most, of

this matter may be adjudicated on a legal basis. For reasons discussed below, including my

determination that the Debtor's allowed exemption of the Compensation Payment is a

preliminary and dispositive issue, I find that:

---

[2]     However, the Trustee maintains there is a factual issue with regard to the Debtor's intent to deceive.

- The Compensation Payment, including the Contingency Fee, is fully exempt pursuant to 11 U.S.C. §522(d)(10)(C);

- Because the allowed exemption removes the Compensation Payment from the bankruptcy estate, the Trustee may not pursue an avoidance action pursuant to 11 U.S.C. §§ 549, 550, and 551; and

- The Trustee fails to offer evidence to support the nondischargeability causes of action pursuant to 11 U.S.C. §§727(a)(2)(B), (a)(4), and (a)(6), warranting summary judgment on those causes of action in favor of the Debtor.

Summary judgment on all counts will, therefore, be granted to the Debtor and the Firm.


## II. PROCEDURAL HISTORY

The Debtors filed for chapter 7 bankruptcy protection on November 5, 2019.  The same day, Lynn E. Feldman was appointed chapter 7 Trustee.

The Compensation Payment was disclosed on the Debtors' schedules.  It is listed as an asset on both the Debtors' original and amended schedules A/B and originally listed as 100% exempt pursuant to 11 U.S.C. §522(d)(11)(E) on Schedule C.  Doc. # 1 at 17 in the main case. [3] Amended Schedule C, filed on January 10, 2020, lists the Compensation Payment as either partially or fully exempt pursuant to three (3) statutory provisions:

- 100% exempt pursuant to 11 U.S.C. §522(d)(11)(E);

- Partially exempt (in an amount of $25,150.00) pursuant to 11 U.S.C. §522(d)(11)(D); and

- 100% exempt pursuant to 11 U.S.C. §522(d)(10)(C).

The Debtors' Schedule of Financial Affairs states that the Debtor received income of $12,965.00 from workers' compensation in the ten (10) months preceding the bankruptcy filing.

---

[3]     Docket entries in the main bankruptcy case are noted as such; all other docket entries refer to the above-captioned Adversary Proceeding.

Doc. # 1 at 41 in the main case.  Amended Schedule I reports that the Debtor receives $1,625.00 per month from workers' compensation.  Doc. # 25 at 2 in the main case.

Following the disclosure of the Compensation Payment at the §341 Meeting of Creditors, (which was concluded on January 10, 2020) the bankruptcy case was changed from a no-asset to an asset case.  Doc. #16 in the main case.

The Trustee commenced this Adversary Proceeding on February 5, 2020 and alleges the following causes of action: 1) avoidance and recovery of post-petition transfer pursuant to 11 U.S.C. §549; §550, and §551 (Counts I & II); 2) disallowance of claims pursuant to 11 U.S.C. §502 (Count III); 3) objection to discharge pursuant to §§727(a)(2)(B), (a)(4), and (a)(6) (Counts IV & V); and 4) objection to the Debtor's exemption of the Compensation Payment (Count VI). The Trustee named as defendants the Debtor (but not Mr. Buffenmeyer), the Firm, the Arc, and NorthStone Insurance Company ("NorthStone"), the Arc's insurer.

Following a failed attempt by the parties to mediate, on September 14, 2020, I granted the Arc and NorthStone's motion to dismiss them from this action.  Doc. # 43.  The remaining Defendants are the Debtor and the Firm, who have each answered the Complaint.  See doc. #'s 6 & 9.

Separately, and previously, I denied the Debtor's Motion for Judgment on the Pleadings pursuant to an Opinion and Order dated December 9, 2020.  Doc. #'s 51 & 52.

On February 23, 2021, each of the remaining three (3) parties filed a Motion for Summary Judgment: doc. # 57 (the "Debtor's Motion"), doc. #59 (the "Trustee's Motion"), and doc. #61 (the "Firm's Motion").  The parties responded to each other's Motions; the Debtor and Trustee filed Replies.  The matter is now ripe for adjudication.

### III. FACTUAL BACKGROUND

The following facts are taken from the Complaint and pleadings and are not in dispute.

On March 1, 2019, the Debtor, a home health aide, was injured at work while lifting a patient. As a result of being unable to work after the injury, the Debtor received workers' compensation benefits from the Arc for her full biweekly earnings for the period April 2, 2019 to May 23, 2019. After this time, the Debtor returned to work and was placed on "light office duty," receiving a "partial loss of earnings." Debtor's Motion at Ex. B, p.2; Firm's Motion at Ex. A. The Debtor continued to receive partial disability benefits until August 2, 2019, when she stopped working altogether and began receiving payment of full disability to supplement or replace her lost income.

Shortly after her injury, in April 2019, the Debtor engaged the Firm to represent her in pursuit of a workers' compensation claim. The Arc was working at cross purposes and in September 2019 filed a petition to terminate the Debtor's workers' compensation benefits. In October 2019 (pre-petition), the Firm demanded $122,000.00 from the Arc to settle the Debtor's claim. On November 25, 2019 (post-petition) the Debtor and Arc reached a "Compromise and Release Agreement by Stipulation Pursuant to Section 449 of the Workers' Compensation Act," (the "Agreement"), Debtor's Motion at Ex. A, pursuant to which the Debtor granted a comprehensive release in exchange for a total payment from the Arc of $85,000.00. The Agreement was approved by a workers' compensation judge on December 12, 2019. Pursuant to the terms of the Agreement, on December 13, 2019 (also post-petition), the Debtor received $68,000.00 of the settlement amount and the Firm received the remaining $17,000.00. The Continency Fee was paid to the Firm pursuant to the Debtor and Firm's contingency agreement (the "Contingency Contract"). Firm's Motion at Ex. A, pg. 7.

The Agreement between the Arc and Debtor provides, *inter alia*, that:

> Employer/Insurer will pay $85,000.00 to the Claimant from which she will pay an attorney's fee of 20%, or $17,000.00, leaving net the balance of $68,000.00 as consideration for <u>her full and final release</u> of <u>all claims</u> pursuant to the Workers' Compensation Act including but not limited to past, present, and future wage loss, specific loss, disfigurement, and medical benefits of any kind arising out of or from her March 1, 2019 injury . . . The Claimant understands and agrees that this resolution is final and completely resolves all claims to workers' compensation benefits she may have had against the Employer/Insurer . . . .

Agreement at 2 (emphasis in original).

On December 13, 2019, NorthStone funded the settlement.  The Debtor did not notify the Arc, NorthStone, or the Firm of her bankruptcy filing and did not seek or obtain bankruptcy court approval for entering into the Agreement.  <u>See</u>, McCabe Affidavit at doc. #62 at ¶8.

At her §341 Meeting of Creditors, the Debtor first disclosed to the Trustee that she had entered into the post-petition settlement.  After the §341 Meeting, the Debtor amended her schedules to include both the existence of the Agreement and the settlement amount.

## IV.  THE PARTIES' ARGUMENTS

As stated above, each of the remaining parties filed a motion for summary judgment.  Both the Debtor and the Firm moved for summary judgment as to all counts against them, while the Trustee moved as to Counts I, II and VI of the Complaint.

The arguments regarding Counts I and II for avoidance and recovery of the post-petition transfer and Count VI, objecting to the exemption of the Compensation Payment, are interrelated.  The Trustee argues that the Compensation Payment is avoidable pursuant §549 because the transfer[4] was unauthorized and occurred post-petition.  She contends that the

---

[4]      For ease of reference, the Compensation Payment made by the Arc will at times be referred to – as the parties do – as a "transfer."  But this term in this Opinion does not indicate that the entire Payment was a
Fn cont'd

Compensation Payment was property of the estate which the Trustee is authorized to administer.

Because the Debtor has not successfully exempted the proceeds, those funds remain subject to

avoidance and may not be exempted.

The Debtor, on the other hand, argues that as an initial matter, under §541(a)(6), proceeds

derived from future earnings are specifically excluded from property of the estate.  She asserts

that because she was not owed any "back pay" or medical benefits at the time she filed for

bankruptcy, the Agreement pertains only to "future wage loss and support" and that any

language in the Agreement to the contrary is meaningless "boilerplate."  Debtor's Motion at 4-5.

According to the Debtor, the Agreement dealt with only "an exempt right to loss of future

income due to a disability."  Debtor's Motion at 7.  The Debtor maintains that even if the

proceeds are property of the estate, she has a valid exemption for the full value of the

Compensation Payment.

The Debtor further asserts that she is entitled to summary judgment as to Counts V and

VI, in which the Trustee objects to discharge, because the record is devoid of any evidence of

fraud.  The Debtor contends that she disclosed her right to payment on Schedule C, filed with the

Petition, and then later updated her disclosure to include the settlement and amount.  The Trustee

contests the inference to be made from the Debtor's actions, instead positing that the Debtor

attempted to conceal the transfers.

The Firm moves for summary judgment as to Counts I, II, and III.  The Firm contends

that the Compensation Payment was properly exempted and therefore did not become property

---

conveyance of estate property from the Debtor.  Rather, the Compensation Payment was made <u>to</u> the Debtor by the
Arc.

The portion of the Payment made directly from the Arc *to the Firm* (on behalf of the Debtor) was, as
discussed in the text, a "transfer" of estate property within the meaning of 11 U.S.C. §549.  However, because I
conclude that the Trustee's cause of action pursuant to §549 fails, I will not parse the issue of whether the payment
to the Firm was a transfer from the Debtor herself.

7

of the estate.  The Firm insists that recovery against it is improper because it is good faith

recipient of a portion of the funds.  See 11 U.S.C. §550(b)(1).  Its fees were approved by the

workers' compensation judge and cannot now be modified.


## V.  SUMMARY JUDGMENT STANDARD

The standard regarding summary judgment is well known and will be summarized

briefly.  Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if

"the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Genuine issues of material fact

refer to "any reasonable disagreement over an outcome-determinative fact."  In re Energy Future

Holdings Corp., 990 F.3d 728, 737 (3d Cir. 2021) (citing Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986)).

The purpose of a motion for summary judgment is not to weigh the evidence presented,

but rather to determine if the evidence warrants adjudication by trial.  Anderson v. Liberty

Lobby, Inc., 477 U.S. at 249–252 (1986).  In reviewing the evidence presented, the court must

draw all reasonable inferences in the light most favorable to the nonmoving party.  Halsey v.

Pfeiffer, 750 F.3d 273, 287 (3rd Cir. 2014).

To successfully oppose entry of summary judgment, the nonmoving party may not

simply rest on its pleadings, but must demonstrate, through the submission of admissible

evidence, that a factual dispute remains for trial.  In re Bentivegna, 597 B.R. 261, 263–64

(Bankr. E.D. Pa. 2019) (citing Celotex Corp. v. Catrett, 477 U.S. at 324 (1986)).

This standard applies where, as here, parties have filed competing motions for summary

judgment.  Cross motions for summary judgment must each be analyzed on their own merits; the

filing of conflicting motions does not necessary mean that one must be granted if the other is

denied.  Transportes Ferreos de Venezuela II CA v. NKK Corp., 239 F.3d 555, 560 (3d Cir.

2001); St. Paul Fire & Marine Ins. Co. v. Pennsylvania Nat'l Mut. Cas. Ins. Co., 2021 WL

859407, at *3 (E.D. Pa. Mar. 8, 2021).


## VI. ANALYSIS

### A.  IS THE WORKERS' COMPENSATION PAYMENT PROPERTY OF THE ESTATE?

Before deciding the status of the Compensation Payment, I must determine its nature.

That is, the question of whether the settlement proceeds may or must be exempted, as well as

whether the Compensation Payment may be avoided, rests, in part, on whether the post-petition

payment may be deemed property of the chapter 7 bankruptcy estate.


### 1.  The Compensation Payment Replaces Post-Petition Loss

As a preliminary issue, and contrary to the Trustee's assertion, I find that the

Compensation Payment covers only post-petition wage loss.

Certain key, undisputed evidence elicits this conclusion.  First, the Debtor received

ongoing and uninterrupted disability payments (either partial or full, depending on whether she

was working part-time or not at all) from the date of her injury, March 1, 2019, until the time of

the Agreement. See Agreement at 1 (describing disability payments).  In fact, the Agreement

specifies that zero amount of past due compensation is due to the Debtor as of the date of the

Agreement. Id. at question 5.  The Debtor confirms this fact in her Affidavit, stating and

providing details that, due to the fact that her income was supplemented from the date of the

injury to the date of the settlement, she "lost no recoverable income prior to the filing" of the

bankruptcy petition.  Ex. B to Debtor's Motion at ¶10.  See also ¶13 (Debtor had "no claims for

past wages or unpaid medical benefits" as of the petition date); Exhibit C to Motion (Affidavit by

worker's compensation counsel); see also McCabe Affidavit at doc. #62 at ¶19.

The Agreement specifies that the net award of $68,000.00 paid to Ms. Buffenmeyer is

compensation "for the impairment of [Debtor's] earning power for the remainder of her life."

Agreement at 2 (emphasis added).

Further, the Agreement states that in calculating disability benefits (if any are warranted),

the Social Security Administration should account for the settlement as "loss of future earnings .

. . for 411.6 months [Debtor's life expectancy] commencing on November 25, 2019." Agreement

at (unpaginated) 5 (emphasis added).

The Trustee, arguing that the settlement represents both past and future wage loss, relies

exclusively on the following language in the Agreement:

> Employer/Insurer will pay $85,000.00 to the Claimant from which she will pay an
> attorney's fee of 20%, or $17,000.00, leaving her the balance of $68,000.00 as
> consideration for her full and final release of all claims . . .  including, but not limited to
> **past, present, and future wage loss** . . .  of any kind arising out of or from her March 1,
> 2019, injury . . . .

Agreement at 2 (underline in original; bold emphasis added).  This provision may, at first blush,

seem to indicate - as the Trustee claims - that the settlement compensates for pre-petition (i.e.,

"past") wage loss.  But the more logical reading – in light of the preceding discussion – is that

the language indicates that the Debtor releases all claims, including past wage loss, *if any*.  In

other words, the Agreement provides a broad release of the Debtor's claims against the Arc, but

does not necessarily indicate that the Debtor does, in fact, maintain claims for pre-petition wage

loss.  The language cited by the Trustee does not alter this conclusion.

### 2.   The Compensation Payment is Property of the Estate

My conclusion that the Compensation Payment covers only post-petition earnings does not, as the Debtor suggests, lead to a determination that the proceeds of the Claim are not property of the estate.  See Debtor's Response at 2-3.

The Debtor relies on the exception provided in 11 U.S.C. §541(a)(6), which states that property of the estate includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate , except such as are earnings from services performed by an individual debtor after the commencement of the case."

This provision ordinarily exempts the Debtor's post-petition wages and earnings. However, the exception outlined is §541(a)(6) is narrow, applying only to circumstances in which the payment is "attributable to post-petition services ***actually rendered by the debtor***." Longaker v. Boston Scientific Corp., 715 F.3d 658, 662 (8th Cir. 2013) (holding that employment agreement which constituted, in part, post-petition earnings was property of the estate) (emphasis added).  See also In re Yonikus, 996 F.2d 866, 870-71 (7th Cir. 1993) (pending workers' compensation payment is contingent future earnings and thus property of the estate); In re Segal, 579 B.R. 734, 746 (E.D. Pa 2016) (proceeds from consulting agreement were property of the estate where agreement did not require debtor to "perform any particular services"); In re A'Hearn, 2011 WL 4704235, at *6 (Bankr. N.D. Iowa Oct. 4, 2011) (funds are only subject to §541(a)(6) exception if "they are paid as the result of actual services performed postpetition, or are conditioned upon the performance of continued services postpetition").

Because the Debtor did not render any actual post-petition service to the Arc, the Compensation Payment does not fall under the exception outlined in §541(a)(6). Accordingly, the workers' compensation proceeds are property of the estate.

### B.    ORDER OF DETERMINATIONS: WHAT COMES FIRST?

My conclusion that the Compensation Payment is property of the estate means that if the Debtor's exemption of this asset is disallowed (and the property is not removed from the estate), then the asset may – if all elements are met – be subject to the Trustee's §549 avoidance action.

The Trustee seeks both to disallow the Debtor's exemption of the Compensation Payment and to avoid the payment as an impermissible post-petition transfer. One cause of action depends on the outcome of the other. If the Trustee's objection to the Debtor's exemption of the Compensation Payment is determined first - and overruled - then the proceeds would no longer be property of the estate and the avoidance action would be rendered moot. However, if I take the avoidance issue as a preliminary matter, then a finding in the Trustee's favor may render the exemption issue moot because the Compensation Payment would be distributed as part of the estate. Thus, the order in which I decide the central issues here – whether the Compensation Payment may be exempted and whether it may be avoided - is critical.

So which should come first? Not surprisingly, the parties disagree about the logical order of determination. The Trustee argues that the Debtor's exemption "as of this date [of the filing of the Adversary Proceeding] . . . has not been allowed . . . which brings it well within the ambit of the Trustee's §549 claim." Trustee Response at 7. The Debtor, on the other hand, maintains that the preliminary issue must be whether her exemption is allowed. E.g. Debtor Response at 3; Reply at 2.

I agree with the Debtor that the question of whether the Compensation Payment is an exemptible asset is a preliminary matter.

The Trustee posits a "gotcha" argument – asserting that because a claimed exemption is not allowed unless and until an objection thereto is overruled, she can swoop in in the meantime, avoid the transfer,[5] and claw back the asset for distribution.  This contention, that the §549 transfer cause of action should be determined first, relies on an assumption that in the interim period after a chapter 7 case is filed and before an objected to exemption is allowed, the property in question remains part of the bankruptcy estate, ripe for a trustee's picking.  See Trustee Brief at 7-8.

While the Trustee's argument has some technical appeal - if the Compensation Payment is (as I just determined) property of the estate, what's wrong with an organized and eager effort to recover the funds for the benefit of creditors?  The practice is problematic for at least three (3) reasons.

First, the Trustee's attempt to avoid the Compensation Payment fails to recognize that, in practical terms, there is a grace period between the filing of a petition and when exemptions are determined.  A Debtor does not simply surrender all property of the estate upon filing; she continues to use the property prior to formal approval of the exemption.  In re Trujillo, 485 B.R. 238, 249 (Bankr. D. Co. 2012) (noting that Debtors do not deliver all their worldly goods to the trustee pending resolution of their exemptions, but rather "in reality, chapter 7 Debtors continue to use property of the estate post-petition.  The Debtor continues to live in his home, cook his

---

[5]	Again, it bears remembering that the portion of the Compensation Payment paid to the Debtor ($68,000.00) was not a transfer of estate assets, post-petition or otherwise; it was a payment *to* the Debtor.  Because I find, for reasons discussed in the text, that the Trustee's §549 avoidance cause of action is without merit, a discussion of the relevance of the division of the Compensation Payment between the Debtor and a third party (the Firm) is not necessary.

food in his pots and pans, wear his clothing, drive his car, and watch programs on his expensive

flat screen television."). <u>See also</u> <u>In re Bucchino</u>, 439 B.R. 761, 773 (Bankr. D.N.M. 2010)

(acknowledging that "as a practical matter" debtors use funds that they wish to exempt).

Second, the Trustee's argument flouts prevailing legal authority which provides that a

determination of an avoidance action may preclude a debtor's ability, critical to bankruptcy

rehabilitation, to exempt assets from the estate.  The exemption issue should thus, courts hold, be

dealt with first.[6]  <u>See</u> <u>In re Chambers</u>, 575 B.R. 881 (Bankr. N.D. Iowa 2017); <u>In re O'Brien</u>, 443

B.R. 117, 138 (Bankr. W.D. Mich. 2011).  In <u>O'Brien</u>, the debtors sought to amend their

schedules to exempt tax refunds that they had already partially spent.  The Court held that the

debtors could exempt the property and that the delay in seeking the exemption did not cut off the

debtors' exemption rights.  The court reasoned that:

> **When an action to avoid or recover a postpetition transfer is filed, it is prudent for
> the court to first determine whether the property has been properly exempted by
> the Debtor or not** . . . Before it is determined whether an avoidable postpetition transfer
> has occurred, it must be known whether the transfer involved property of the estate . . .
> Of course, *after* a trustee avoids a transfer, a recovery is awarded or a turnover is ordered,
> *only then* is it 'too late' for a debtor to exempt the property.

443 B.R. at 138 (bold emphasis added).

Third, it is well settled that both claimed exemptions and post-petition amendments

thereto relate back and are determined as of the petition date.  <u>E.g.</u>, <u>In re Chiu</u>, 266 B.R. 743, 751

(B.A.P. 9th Cir. 2001), <u>aff'd</u>, 304 F.3d 905 (9th Cir. 2002) ("exemptions and impairment are

determined on the date of bankruptcy and without reference to subsequent changes in the

character or value of the exempt property") (citing cases, including <u>White v. Stump</u>, 266 U.S.

---

[6]    I acknowledge contrary authority with regard to a pre-petition fraudulent transfer cause of action. <u>In re
Wickstrom</u>, 113 B.R. 339 (Bankr. W.D. Mich. 1990); <u>In re Smoot</u>, 265 B.R. 128 (Bankr. E.D. Va. 1999); <u>In re
Clark</u>, 2018 WL 4940799, at *10, n.15 (Bankr. E.D. Pa. Oct. 10, 2018) (outlining cases on both sides). However,
this line of authority can be distinguished because the avoidance action in those cases was a result of separate,
problematic behavior, distinguishable from the receipt of the *potentially* avoidable sums.

310, 313, 45 S. Ct. 103, 69 L. Ed. 301 (1924)); In re Gentry, 459 B.R. 861, 863–64 (Bankr. M.D.

Fla. 2011) ("the amendment relates back to, and is effective as of, the petition date"); In re Walz,

546 B.R. 836, 837 (Bankr. D. Minn. 2016) (same).  The fact that exemptions claimed by the

Debtor are determined as of the petition date, rather than based on intervening facts or

circumstances, foils the Trustee's attempt to impose the relief sought in the adversary and claw

back the funds in the time between the petition date and the claim of the exemption by the

Debtor.

Because I decline the Trustee's invitation to make a quick determination that the

Compensation Payment may be avoided as a post-petition transfer, I will first consider the issue

of whether the asset was effectively exempted.

## C.  THE COMPENSATION PAYMENT IS EXEMPT

### 1.  The Compensation Payment is Exempt Pursuant to §522(d)(10(C)

The Debtor claimed the Compensation Payment as exempt on Schedule C pursuant to

three sections of the Code:  §522(d)(11)(E); §522(d)(11)(D); and 11 U.S.C. §522(d)(10)(C).[7]

The Trustee, objecting to the Debtor's claimed exemption pursuant to Count VI of the

Complaint, bears the burden of proof.  Fed. R. Bankr. P. 4003(c).

---

[7]      These three (3) Code sections were stated on the Debtors' amended Schedule C.  (The Debtor's original
Schedule C only listed an exemption pursuant to §522(d)(11)(E)).  As discussed, supra, the amended exemptions
relate back to the petition date.  Also, the Adversary Proceeding was filed after the amendment.  Therefore, analysis
is proper under any of these three (3) provisions.

Because I find that the Compensation Payment is fully exempt pursuant to

§522(d)(10)(C), I will not analyze the exemption issues with regard to the other two provisions.[8]

Section 522(d)(10)(C) allows exemption of "the debtor's right to receive a disability,

illness, or unemployment benefit." This provision allows a Debtor to exempt benefits that are

"akin to future earnings," *including a disability benefit*. 4 Collier on Bankruptcy ¶522.09 (16th

Ed). The <u>entire amount</u> of these benefits is exempt. <u>Id.</u> At the time of the petition, the Debtor

had a claim for worker's compensation related to *future earnings* which had not yet been

monetized. Section 522(d)(10)(C) is therefore the appropriate exemption. Moreover, that

exemption applies equally to the Compensation Payment made postpetition. <u>See</u> <u>In re Michael</u>,

262 B.R. 296, 298 (Bankr. M.D. Pa. 2001) (Should there be an exemption in a *right*, which is

then post-bankruptcy converted into other property, then that property would also be excluded

from the bankruptcy estate).

Workers' compensation awards have consistently been held to fall under the umbrella of

disability benefits that are fully exempt pursuant to 11 U.S.C. §522(d)(10)(C). For example, <u>In</u>

<u>re Cain</u>, 91 B.R. 182 (Bankr. N.D. Ga. 1988), reviewed the debtor's claimed exemption of a

workers' compensation benefit and held that §522(d)(10)(C) – rather than either §522(d)(11)(D)

or §522(d)(11)(E) – was applicable. The court further held that the workers' compensation

payment was exempt in its entirety under §522(d)(10)(C):

> The legislative history of the exemption statute, together with the intent of the statutory
> scheme of the workers' compensation statutes, supports a finding that workers'
> compensation benefits are exempt in their entirety under 11 U.S.C. §522(d)(10)(C) . . .
> Rather than being compensation for losses as in tort actions, Workers' Compensation

---

[8]    11 U.S.C. §522(d)(11)(D) exempts (up to a statutory limit) loss resulting from "personal bodily injury" and
11 U.S.C. §522(d)(11)(E) exempts compensation for "loss of future earnings . . . to the extent reasonably necessary
for the support of the Debtor and any dependent of the Debtor."

Workers' compensation payments have "generally been [determined to be exempt] under §522(d)(10)(C),
as opposed to [sic] 522(11)(D) and (E)." <u>In re Williams</u>, 181 B.R. 298, 300 (Bankr. W.D. Mich. 1995).

> benefits are disability benefits akin to future earnings of the debtor . . . Because Debtor's
> worker's compensation benefits are exempt in their entirety, uncertainty concerning the
> amount which Debtor will ultimately receive upon settlement of his case is irrelevant.

In re Cain, 91 B.R. at 183-84 (internal quotations and citations omitted).  See also 9A Am. Jur.

2d Bankruptcy §1468 ("Workers' compensation benefits are clearly encompassed within the

provision for disability benefits" and are, therefore, exemptible in their entirety); In re Evans, 29

B.R. 336, 339 (Bankr. D.N.J. 1983) (either temporary or permanent workers' compensation

awards are fully exempt pursuant to §522(d)(10)(C); §522(d)(11) is not applicable); In re

Nielsen, 401 B.R. 149, 150 (Bankr. M.D. Pa. 2009) ("simply put, workers' compensation is

income by reason of a disability, notwithstanding the fact that it may be measured by past or

prospective income had the injury not occurred").

The settlement amount received by the Debtor from the Arc was compensation for the

fact that the injury she suffered at work was disabling, preventing full-time employment.  The

entire amount of the Compensation Payment is thus exempt pursuant to §522(d)(10)(C).  Once

an exemption is allowed, exempt property revests in the Debtor and is excluded from the

bankruptcy estate.  In re Bell, 225 F.2d 203, 215 (2nd Cir. 2000); In re Campbell, 313 B.R. 313,

321 (B.A.P. 10th Cir. 2004).

In re Michael, 262 B.R. 296 (Bankr. M.D. Pa. 2001), relied on by the Trustee, does not

persuade me otherwise.  The Michael Court held that a lump sum workers' compensation

payment that was deposited pre-petition was not exempt, but specifically noted that

"[w]orkmen's compensation benefits, however, have been held to be exemptible under §

522(d)(10)(C)."  Michael, 262 B.R. at 298.  Michael is distinguishable from the case sub judice,

in which the Debtor seeks to exempt a post-petition workers' compensation award in advance of

the sum being paid.  To the extent that <u>Michael</u> contradicts or detracts from my conclusion the

Compensation Payment is exempt, I decline to follow the case.


### 2.   Policy Considerations

While my determination that the Compensation Payment is fully exempt is based on the

legal principles set forth above, the stark facts of this case warrant pause.

The Trustee objects to the Debtor's claim of exemption based on a technical reading of

the case law and rules, <u>i.e.,</u> the Trustee's position is that the Debtor may not exclude the

Compensation Payment from the estate because such exemption – though stated on the Debtor's

original schedules - had not specifically been deemed allowed by this court when the post-

petition payment to the Debtor took place.

This position is both legally untenable, as discussed, and also runs counter to the policy

considerations which support allowing a debtor to shield assets from distribution to creditors.

Bankruptcy exemptions, which should be construed liberally in favor of the Debtor, <u>In re</u>

<u>Christo,</u> 228 B.R. 48, 50 (B.A.P. 1st Cir. 1999), seek to balance the rights of creditors with a

debtor's need to emerge from bankruptcy without being stripped of all possessions.  <u>See</u> <u>In re</u>

<u>Nuara,</u> 607 B.R. 116, 123 (Bankr. E.D.N.Y. 2019).

The rationale for protecting certain property from the trustee's reach and from creditor

claims is to "provide a Debtor with some comfort that she *will not be impoverished* and emerge

from bankruptcy with a fresh start."  <u>In re Nuara</u>, 607 B.R. 116, 123 (Bankr. E.D.N.Y. 2019)

(emphasis added).  <u>See</u> <u>also</u> <u>In re Collins</u>, 281 B.R. 580, 583 (Bankr. M.D. Pa. 2002) (the

"historical purpose of exemption laws has been . . .  to provide [a Debtor] with *the basic*

*necessities of life* so that even if his creditors levy on all of his nonexempt property, the Debtor

will not be left destitute and a public charge." (citing H.R.Rep. No. 95–595, 95th Cong., 2d

Sess., at 126 (1977)) (emphasis added).

This context frames Congress' allowance of the exemption of "disability, illness, or

unemployment benefit[s]." 11 U.S.C. §522(d)(10)(C). Payments for forced loss of income,

including workers' compensation benefits, are not windfalls to a bankruptcy Debtor. Rather,

such payment seeks to replace *a portion* of what an employee might have earned if she remained

healthy. Workers' compensation is not 'compensation for losses' as third-party tort actions are.

These benefits are 'akin to future earnings of the Debtor' whose ability to generate future

earnings has been reduced or . . . completely lost because of a work related injury. . . The

benefits are intended to substitute for those lost earnings, and. . . .**the amount of compensation**

**awarded may be expected to go not much higher than is necessary to keep the worker from**

**destitution.** In re LaBelle, 18 B.R. 169, 171 (Bankr. D. Me. 1982) (emphasis added and internal

citations omitted) (citing 1 Larson's Workmen's Compensation Law, Section 2.50).

Here, the Debtor received a total of $68,000.00 to replace future earnings and compensate

for the debilitating injury that she suffered at work. The compensation likely will keep the

Debtor and her husband above water for a while, but a review of the Debtors' schedules affirms

that the lump sum is not a ticket to easy street. The Debtors have one car that is almost twenty

(20) years old. They live in a mobile home and do not own the land on which their home sits.

The couple had 55 cents in their savings account at the time of the bankruptcy filing. The

Debtors owe approximately $35,000.00 in credit card debt and $10,000.00 in student loans.

Their monthly take home income, including the workers' compensation which the Debtor

previously received on a monthly basis rather than as a lump sum, is less than $5,000.00, of

which about 25% is spent on medical and dental expenses.

The Debtors are already living on the edge; denial of the $68,000.00 Compensation

Payment might well push them into poverty and would almost certainly deny them the fresh start

promised by the bankruptcy proceeding.   A chapter 7 trustee's job, of course, is to recover funds

in order to enhance distribution to creditors.   To further this pursuit, the trustee enjoys the benefit

of certain statutory tools, including the ability to object to claimed exemptions and to avoid and

recover transfers by and from the debtor.   In this case, however, in which there is a thin legal

basis for denying the Debtors a small sum meant to provide for basic needs, I question whether

the Trustee has made prudent use of those tools.

### D.   AVOIDANCE AND RECOVERY CAUSES OF ACTION ARE MOOT

The allowance of the Debtor's exemption means that the Compensation Payment is now

no longer property of the estate.   As the Trustee acknowledges "[w]hen a claimed exemption is

allowed, the property is withdrawn from the bankruptcy estate and becomes unavailable for

liquidation and distribution to Debtor's creditor's."   Brief at 7, <u>citing</u> <u>In re White</u>, 600 B.R. 335,

341 (Bankr. E.D. Pa. 2019).

Thus, the determination that the Compensation Payment is an exempt asset is fatal to the

Trustee's §549 cause of action.   Section §549(a) provides, in relevant part, that "the trustee may

avoid a **transfer of property of the estate** . . . that occurs after the commencement of the case;

and . . . that is not authorized under this title or by the court." (emphasis added).   As the statute

indicates, not all postpetition transfers are avoidable.   <u>O'Brien</u>, 443 B.R. at 135.   Where an

exemption has been sought and allowed, as here, the property in question is "removed or

'reclaimed'" from the estate, meaning that the elements are not met and no *avoidable*

postpetition transfer has been made.  <u>O'Brien</u>, 443 B.R. at 135 (<u>citing</u> <u>Schwab v. Reilly</u>, 560 U.S.

770 (2010)).

The allowed exemption of the Compensation Payment also means that §522(g) is not

relevant to this discussion.  Section 522(g) allows, under certain circumstances, for the Debtor to

exempt "property that the trustee recovers."  The provision only applies to property that a trustee

brings into the estate; if the Trustee has not yet recovered the property, §522(g) "does not bar a

Debtor from exempting the property that she transferred post-petition."  <u>In re Chambers</u>, 575

B.R. 881, 889 (Bankr. N.D. Iowa 2017) (<u>citing</u> <u>In re Brooks</u>, 393 B.R. 80, 87 (Bankr. M.D. Pa.

2008)).  <u>See also</u> <u>In re Mickens</u>, 575 B.R. 797 (Bankr. W.D. Mich 2017) (finding that avoidance

of fraudulent transfer did not constitute a recovery under §522(g) and, therefore, the Debtors

exemptions remained intact).

Here, the exemption of the Compensation Payment removes the property from the estate,

rendering the Trustee's attempt to avoid and recover post-petition transfers (Counts I and II of

the Complaint), as well as the discussion of §522(g), moot.[9]

## E.  THE PAYMENT TO THE FIRM IS NOT RECOVERABLE BY THE TRUSTEE

### 1.  The Contingency Fee is Exempt as Part of the Compensation Payment

The Debtor received 80%, or $68,000.00, of the $85,000.00 Compensation Payment.

The remaining 20% ($17,000.00) was paid to the Firm directly pursuant to the Contingency

Contract.  Trustee's Motion, Ex. E ($17,000.00 check from NorthStone to the Firm dated

---

[9]        Also moot is Count III of the Complaint, which seeks "disallowance of all claims" pursuant to 11 U.S.C.
§502(D) and (J).  Section 502(D) provides that "the court shall disallow any claim of any entity from which property
is recoverable [as a transfer under section §549]."

          No claims have been filed in this case.  And the Trustee's avoidance action has been determined to be
without merit.

December 13, 2019).  On December 12, 2019, post-petition, the fee to the Firm was approved by the workers' compensation judge.  Firm's Motion at Ex. B.

The Trustee seeks to recover the Contingency Fee paid to the Firm as an impermissible transfer of estate property.  Both the Trustee and the Firm seek summary judgment with regard to the relevant counts of the Complaint against the Firm (Counts I and II, seeking recovery of post-petition transfers pursuant to 11 U.S.C. §§549, 550, and 551).

Preliminarily, I agree with the Trustee that the entire Compensation Payment (including the Contingency Fee) may be considered property of the estate.[10]  See Section VI A.2., supra; In re Jess, 169 F.3d 1204, 1207 (9th Cir. 1999) ("Payments for pre-petition services are not excludable from the estate solely because post-petition services are required to receive payment."); In re Carlson, 263 F.3d 748, 750 (7th Cir. 2001).[11]

---

[10]    As the Trustee points out, the fact that the Contingency Fee may be non-transferable pursuant to state law is of no moment in an analysis of whether the fee is property of the estate.  Sierra Switchboard Co. v. Westinghouse Elec. Corp., 789 F.2d 705, 709 (9th Cir. 1986).

[11]    One could argue (though the parties have not) that a portion of the Contingency Fee represents the post-petition work of executing the Agreement and, therefore, is not property of the estate.  The Firm does assert that its fee only came due upon the post-petition approval of the Agreement.  Firm Brief at 9.  However, this does not lead to the conclusion, nor does the Firm argue, that the entire fee was earned post-petition.

There is a split of authority with regard to the question of whether the post-petition receipt of commission for pre-petition work is property of the estate.  See In re Golde, 253 B.R. 843, 848 (Bankr. N.D. Ohio 2000).  Some courts hold that the portion of the contingency fee payments "attributable to prepetition services," are not property of the estate.  E.g. In re Wu, 173 B.R. 411, 414–15 (B.A.P. 9th Cir. 1994).  Analysis pursuant to this line of cases would require a determination of the percentage of the Contingency Fee that was exclusively for post-petition work and would segregate that amount from property of the estate accordingly.

But this parsing is not necessary here, where I have concluded that the entire Compensation Payment is exempt and not available for recovery by the Trustee. Either the Compensation Payment is excluded as post-petition compensation, or the Payment is excluded by the Debtor's allowed exemption.  In either event, the Trustee cannot recover this sum.

However, the Contingency Fee is excluded from property of the estate – and from the Trustee's reach – because it is exempt as part of the Debtor's Compensation Payment pursuant to 11 U.S.C. §522(d)(10)(C).  See Section VI C, supra.

As discussed, workers' compensation payments are exempt "*in their entirety*."  In re Cain, 91 B.R. 182, 183 (Bankr. N.D. Ga. 1988) (emphasis added). See also In re Wegrzyn, 291 B.R. 2, 7-8 (Bankr. D. Mass. 2003) (noting that workers Compensation Payments are "fully exempt" pursuant to §522(d)(10)(C) and calling the exemption of such "unlimited").

Because the Contingency Fee is a carve out from the Compensation Payment, it may be considered part of the claim rather than a separate, independent payment.  The Agreement between the Debtor and the Arc states that "**out of this gross settlement sum**, Claimant is making a payment of $17,000 in attorney's fees. She will then net the sum of $68,000.00 that represents compensation for the impairment of Claimant's earning power for the remainder of her life." Agreement at ¶13 (emphasis added). Courts have upheld this principle, allowing legal fees to be included in the exemption allowed to a worker's Compensation Payment pursuant to §522(d)(1)(C).  In re Nielsen, 401 B.R. 149, 150 (Bankr. M.D. Pa. 2009); In re Pohl, 316 B.R. 862, 864 (Bankr. W.D. Pa. 2004).[12]

Finally, I note that the Trustee's insistence that the Firm may not prevail in its effort to be compensated for work performed because the Debtor failed specifically to list the Contingency Fee as exempt is misplaced. The Debtor's Amended Schedule C states that **100%** of the Workers' Compensation Payment is exempt pursuant to 11 U.S.C. §522(d)(10)(C) (emphasis

---

[12]    The Contingency Fee, paid from the Arc as part of the Debtor's Compensation Payment, is property of the estate over which this court has jurisdiction.  See Part VI A, supra; 11 U.S.C. §541. Thus the Firm's contention, without the benefit of citation to any legal authority, that the Contingency Fee "cannot be collaterally challenged in this case" because it was approved by a workers' compensation judge, is unfounded and incorrect.  Brief at 11.

added).  As discussed, the amended exemptions relate back to the time of the filing of the

petition.[13]  See Section VI. B., supra; In re OBrien, 443 B.R. 117, 137 (Bankr. W.D. Mich.

2011).  Thus, the fact that the "value of the portion" owned by the Debtor is listed as $68,000.00

rather than the *full* value of the Compensation Payment ($85,000.00, including the Contingency

Fee) does not forfeit the Debtor's right to exempt the entire asset. Doc. #23 in the main case at 2.

### 2.  The Contingency Fee was Paid to a Good Faith Transferee

In the alternative, the Firm is correct that the safe harbor provision included in §550

shields it from liability. 11 U.S.C. §550(b)(1) provides that the trustee may not recover an

otherwise avoidable transfer from "a transferee that takes for value, including satisfaction or

securing of a present or antecedent debt, in good faith, and without knowledge of the voidability

of the transfer avoided."

The payment of the Contingency Fee to the Firm was the satisfaction of an amount owed

for representing the Debtor and thus amounted to value.  The Firm was not aware of the Debtor's

bankruptcy, see McCabe Affidavit at doc. #62 at ¶8, and thus lacked knowledge of the potential

voidability of the transfer of funds to it.

The remaining question is whether the Firm acted in good faith in accepting the

$17,000.00. The question of good faith in this context "is solely whether the grantee knew or

should have known that he was not trading normally but that on the contrary, the purpose of the

trade, so far as the debtor was concerned, was the defrauding of his creditors."  5 Collier on

Bankruptcy ¶550.03 (16th Ed. 2021).

---

[13]    The fact that the Adversary Proceeding was filed after the amended Schedule C was submitted further indicates
that both the Debtors and the Trustee understood the stated exemption to be based on Section 522(d)(10)(C) (the
Code Section cited in the Amended Schedule).

Leaving aside that the purpose of the transfer of the Contingency Fee was *not* to defraud creditors, there is no evidence – and thus no triable issue of fact - that the Firm acted in bad faith in accepting payment for work performed. A company which, in the absence of knowledge of the bankruptcy proceedings, accepts payment acts in the normal course of business. Not having notice, the Firm had no duty to suspect or investigate that the payment was anything but legitimate.  In re Bressman, 327 F.3d 229 (3d Cir. 2003).

The Trustee, relying on In re Smoot, 265 B.R. 128, 140 (E.D. Va 1999), aff'd sub nom Tavenner v. Smoot, 257 F.3d 401 (4th Cir. 2001), argues that a defendant claiming a §550(b) defense "bears the burden of proof," implying that the Firm has defaulted on this responsibility. Response at 11.  The implication is without merit.  In Smoot, the court held that fraudulent transfers to insiders of the debtor were not made in good faith where the immediate transferees had knowledge of the debtor's "unfavorable financial condition" and, therefore, acted in bad faith.  265 B.R. at 140.  The case is distinguishable from ours, in which the Trustee provides nothing to counter the conclusion that the Firm acted in good faith and without knowledge of any (potential) avoidability of the transfer.

## F. SUMMARY JUDGMENT WILL BE GRANTED TO THE DEBTOR ON COUNTS IV AND V: OBJECTIONS TO DISCHARGE

Counts IV and V state causes of action pursuant to §§727(a)(2)(B), (a)(4), and (a)(6). The Trustee asserts that the Debtor's discharge should be denied because she intentionally concealed and refused to turn over assets with "intent to hinder or delay or defraud the Trustee and creditors of the bankruptcy estate"  Complaint at 8.[14]

---

[14]    11 U.S.C. §727(a)(2)(B) states, in relevant portion, that the Debtor shall not be granted a discharge if she "with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property . . . Fn cont'd

The Trustee does not seek summary judgment with regard to these counts. The Debtor, however, asserts that summary judgment in her favor is warranted because the Trustee fails to offer any evidence in support of these allegations.[15]

I agree with the Debtor and therefore will grant her summary judgment on Counts IV and V.

The Trustee, who bears the burden of proof with regard to nondischargeability causes of action, see In re Lybrook, 544 B.R. 537, 552 (Bankr. W.D. Pa. 2015), responds to the Debtor's Motion for Summary Judgment with a conclusory assertion that the Debtor's failure to properly disclose assets on her schedules indicates a malicious intent and warrants a trial to determine the Debtor's state of mind. Trustee Response at 8-9. The Trustee thus reiterates, but fails to flesh out, the allegations contained in the Complaint.

In other words, the Trustee, facing a motion for summary judgment, offers *no evidence* to support Counts IV and V; her Response is devoid of any documentary or testamentary evidence in support of the nondischargeability counts, causing the court to conclude that the Trustee has no such evidence. Despite the fact that discovery in this matter has concluded, the Trustee

---

has transferred, removed, destroyed . . . or concealed . . . property of the estate, after the date of the filing of the petition." 11 U.S.C. § 727(a)(4)(D) denies discharge to a Debtor who withholds "any recorded information . . . relating to the Debtor's property or financial affairs."

　　The Trustee also asserts a cause of action pursuant to 11 U.S.C. §727(a)(6) which provides that a Debtor will not receive a discharge if she refuses to "obey any lawful order of the court . . . ." It is not clear what order the Trustee relies on in making this allegation.

[15]　　The Debtor also mentions, without analysis, that summary judgment is warranted because the Trustee has failed to plead fraud with particularity pursuant to F.R.C.P. 9(b). Rule 9(b) requires that a complaint plead details of fraud allegations amounting to "the first paragraph of any newspaper story. . . the who, what, when, where and how of the events at issue." In re Rockefeller Center Properties, Inc. Securities Litigation, 311 F.3d 198, 217 (3d Cir. 2002).

　　Putting aside the fact that the Debtor did not file a motion to dismiss this Adversary Proceeding – and the related question of whether consideration of a Rule 9(b) objection is proper at the summary judgment stage – I find that, contrary to the Debtor's contention, the Complaint adequately tells its reader the outline of the alleged fraud, namely that the Debtor intentionally hid her Compensation Payment settlement and resulting proceeds from the Trustee and creditors.

apparently wants to hold her cards until trial, when she promises to reveal supporting facts of the

Debtor's intent and misappropriation.  Forcing a trial and enjoying the benefit of keeping the

Debtor on the hook in the meantime, however, is not an option where the Defendant's pursuit of

summary judgment forces the Trustee's hand.

Facing a similar situation, in which a chapter 7 trustee responded to a debtor's motion for

summary judgment by promising to come up with evidence by trial, Judge Frank, of this court,

held that:

> . . . the Trustee misunderstands her obligation under Rule 56 as the party bearing the burden of proof at trial. **To be blunt, the 'appropriate time' for demonstrating that there is evidence that supports every element of each of the Trustee's claims** (in response to the contention that no such evidence exists) **is <u>now</u>, at summary judgment.** It is not sufficient for the Trustee to express 'confidence' that she 'will be able' to muster evidentiary support for her claims at trial.

In re Polichuk, 506 B.R. 405, 423 (Bankr. E.D. Pa. 2014) (emphasis added) (citing cases).  See

also Drummer v. Hosp. of Univ. of Pa., 455 F.Supp.3d 160, 167 (E.D. Pa. 2020) ("summary

judgment is essentially 'put up or shut up' time for the non-moving party; the non-moving party

must rebut the motion with facts in the record and cannot rest solely on assertions made in the

pleadings, legal memoranda, or oral argument.") (citing cases).  Thus, the Trustee's failure or

refusal to support her claims with evidence is fatal at the summary judgment stage.

I further note that the Trustee's thin argument that we can infer misconduct and malintent

based on the information, or lack thereof, in the Debtors' schedules is misguided for at least two

(2) reasons.

First, the Trustee's contention that the Debtor concealed assets is unsupported by the

facts. While the Debtor's settlement of her workers' compensation claim without notice to or

approval from the Bankruptcy Court is not a best practice, Ms. Buffenmeyer did disclose this

asset on her original schedules and Statement of Financial Affairs.  On January 10, 2020, after

the amount of the settlement was determined, the Debtors filed an Amended Schedule C, listing

Ms. Buffenmeyer's share of the Compensation Payment.

Second, the Debtors' statement on their original schedule C that the value of the

Compensation Payment was "unknown" was both reasonable and accurate.  In fact, at the time of

the filing, the amount of the Compensation Payment *was unknown*—the settlement with the Arc

not having yet been reached. The Debtors' reporting thus does not amount either to a mistake or

a reason to doubt their veracity.  See  In re Hanh Hieu Dang, 473 B.R. 218 (Bankr. E.D. Mich.

2012) (exemption sustained even where the trustee alleged "suspicious activity" in Debtor listing

claim as unknown and then cashing Compensation Payment check right after filing); In re

Herald, 294 B.R. 440, 445-46 (Bankr. W.D.N.Y 2003) (Debtor listing claim as zero did not

affect analysis of exemption claim; "[t]his designation was obviously and simply intended to be a

reflection of the fact that at the time the petition was filed the amount of any recovery on the

claims was speculative.").

Prompt disclosure and accurate, timely updates are not the hallmark of a devious

individual working to conceal assets. The Debtor reported the existence of a worker's

compensation claim contemporaneously with her bankruptcy filing and filed an amended

schedule to reflect the correct settlement value of that claim.  The Trustee fails to provide proof

to the contrary.

## VII. CONCLUSION

Because the facts presented are undisputed and sufficient to reach a legal conclusion, I

will grant summary judgment to the Defendants on all counts.  The relatively simple facts

presented in this case – the Debtor settled and received payment for her workers' compensation

claim post-petition – have been complicated by the Trustee's tenacious effort to claw this money back.  The Trustee fails to provide a valid legal basis or any evidence to support this recovery.

The Compensation Payment was timely reported and properly exempted; the exemption falls squarely within the parameters of §522(d)(10)(C).  For these reasons, the exemption will be allowed and the Compensation Payment, including the portion paid to the Firm for services rendered, are removed from property of the estate. Accordingly, the Trustee's claim for turnover of post-petition assets must fail.

An appropriate order will be entered.

Date: <u>July 7 , 2021</u>

**PATRICIA M. MAYER**
**U.S. BANKRUPTCY JUDGE**